**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| FENG (FRANKLIN) TAO, | **)** | **Case No.: 2:26-cv-2421** |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | |
| v. | **)** | **COMPLAINT** |
| | **)** | |
| | **)** | **JURY TRIAL DEMANDED** |
| UNIVERSITY OF KANSAS, | **)** | |
| | **)** | |
| Defendant. | **)** | |

**COMPLAINT**

Plaintiff, FENG (FRANKLIN) TAO, by and through his attorneys, Morvillo Abramowitz Grand Iason & Anello P.C. and Petefish Immel Hird Johnson & Leibold, LLP, for his complaint, alleges as follows:

1.      Plaintiff Feng (Franklin) Tao ("Professor Tao") is a nationally acclaimed researcher and academic.  From 2014 to 2019, he was a tenured associate professor at the University of Kansas ("KU") before he was wrongfully accused of espionage and fraud, and then criminally prosecuted (unsuccessfully) by the U.S. Department of Justice ("DOJ") at KU's behest.  KU terminated Professor Tao without due process before the conclusion of the criminal proceedings, and then retaliated against him for exercising his constitutional rights to sue KU for discrimination.

2.      Professor Tao now brings this action against KU for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Kansas Act Against Discrimination ("KAAD"), Kan. Stat. Ann. § 44-1001 *et seq.*  The facts and circumstances underlying his retaliation claim overlap substantially with the discrimination

claims raised in the related action filed on January 3, 2025 in this Court:  2:25-cv-2005 (the "Discrimination Action").

3. In particular, Professor Tao filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 16, 2023.  In retaliation for his filing of that EEOC Charge, KU refused to reinstate him to his tenured faculty position despite the fact that he was exonerated in the criminal proceeding on July 11, 2024.

4. Instead, KU purported to "provisionally" reinstate Professor Tao solely for the purpose of allowing him to pursue an administrative appeal of his termination through KU's Faculty Rights Board ("FRB").  However, shortly after Professor Tao filed the Discrimination Action, KU unilaterally altered the composition of that FRB to deprive Professor Tao of a hearing before his peers—tenured faculty members—as required by KU's own policies and procedures at the time of his hiring, at the time of his termination, at the time of his provisional reinstatement, and at the time the FRB process was commenced.

5. The change in the FRB composition was unprecedented and designed to ensure that the panel deciding Professor Tao's fate would be composed of individuals beholden to the very administrators who were defendants in the Discrimination Action.  The change in the FRB composition was further retaliation against Professor Tao for pursuing discrimination claims against KU.

6. For over two years after Professor Tao's complete acquittal (and more than three years after his termination), KU deprived Professor Tao of his FRB hearing to punish him for asserting his statutory right to be free from discrimination in the workplace.  It kept him in indefinite procedural limbo—stripped of his tenured position, barred from his research, unable to contest KU's baseless administrative charges, and powerless to secure the reinstatement to which

he is entitled.  KU's actions harmed Professor Tao's career, scholarly reputation, financial security, family members, and his mental health.

7.      KU's retaliatory conduct sends an unmistakable message to its faculty and employees:  Anyone who dares to challenge discrimination by filing a charge or lawsuit will be met with institutional retaliation designed to ensure they never return.

## PARTIES

8.      Professor Tao is an individual of East Asian, Han Chinese descent who originates from China.  During all times relevant to this case, Professor Tao resided in Kansas and was a citizen of Kansas.

9.      Defendant KU is a state-supported educational institution whose main campus is located in Lawrence, Kansas.  KU is an "employer" within the meaning of Title VII.

## JURISDICTION & VENUE

10.      This is an employment retaliation case arising under Title VII.

11.      This Court has subject matter jurisdiction because this case arises under federal law and presents a federal question.  *See* 28 U.S.C. § 1331.

12.      This Court has supplemental jurisdiction over the corresponding Kansas state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy under Article III.

13.      This Court has personal jurisdiction over KU, which is located in Kansas, and the vast majority, if not all, of the unlawful acts and practices set forth below occurred in the State of Kansas.

## EXHAUSTION OF REMEDIES

14.      Venue is proper as the relevant events occurred in the District of Kansas.

15. On May 2, 2025, Professor Tao filed a charge of discrimination and retaliation with the EEOC, alleging ongoing violations of Title VII by KU related to his termination from his tenured professorship at the university, and retaliation by KU against him for filing the EEOC charge and discrimination lawsuit, shortly after which KU refused to fully reinstate Professor Tao, changed the composition of the FRB, and then left Professor Tao's objections and appeal to languish for over a year.

16. On April 22, 2026, the EEOC notified Professor Tao that a notice of his right to sue had been issued.

**STATEMENT OF FACTS**

17. Professor Tao is an accomplished chemist and chemical engineer. After earning his PhD in chemistry from Princeton University in 2006 and completing a postdoctoral fellowship at the University of California, Berkeley, he joined the faculty at the University of Notre Dame. KU recruited Professor Tao in 2014 to serve as a tenured associate professor in its Department of Chemical and Petroleum Engineering.

18. At KU, Professor Tao built and led a research laboratory focused on catalysis and energy science, supported by more than $4 million in federal research funding from the National Science Foundation and the U.S. Department of Energy.

19. Professor Tao's dispute with KU began in April 2019, when an anonymous, and ultimately false, tip accused him of "espionage." Without proper investigation, KU reported the anonymous tip to the DOJ and then actively assisted in building criminal charges against him.

20. On August 21, 2019, Professor Tao was arrested and charged with wire fraud and federal program fraud offenses.

21.     As a member of the KU faculty, Professor Tao was entitled to due process protections under KU's Faculty Code of Rights, Responsibilities, and Conduct, including the right to a hearing before the FRB before any sanction of suspension or dismissal could be imposed.

22.     While the criminal charges were pending, KU sought to terminate Professor Tao. Professor Tao invoked his right to an FRB hearing, and the parties agreed in writing to suspend the FRB hearing until the conclusion of the criminal proceedings against him.  If Professor Tao was ultimately convicted, he would waive his FRB rights.  If he was acquitted, he would be free to proceed with the FRB appeal.

23.     The criminal charges were tried in 2022, and the jury acquitted Professor Tao on some counts but found him guilty on others.  However, the district court later acquitted him of all but one count.  Without waiting for Professor Tao's sentencing, a final judgment, or Professor Tao's appeal, KU terminated Professor Tao from his tenured position on January 6, 2023, without affording him an FRB hearing.

24.     On June 16, 2023, Professor Tao filed a charge of discrimination with the EEOC, alleging that his termination was motivated by race, ethnicity, and national origin.

25.     On July 11, 2024, the Tenth Circuit reversed Professor Tao's sole remaining count of conviction, completing his exoneration.

26.     On July 26, 2024, Professor Tao requested reinstatement from KU.

27.     On August 20, 2024, in retaliation for his filing an EEOC charge alleging discrimination, KU refused to reinstate Professor Tao despite his acquittal on the charges that purportedly formed the basis for his termination.  Instead, KU provisionally reinstated him solely

5

for the purpose of giving him the FRB appeal that was contractually mandated by his employment contract.

28.    On September 6, 2024, KU provisionally reinstated Professor Tao and initiated the FRB proceedings by issuing a Proposed Administrative Action seeking dismissal.

29.    In December 2024, the parties were satisfying the mandatory mediation requirement as part of the FRB process, but no resolution was reached.

30.    On January 3, 2025, Professor Tao filed the Discrimination Action in this Court.

31.    On February 28, 2025, KU issued a statement of charges to the FRB against Professor Tao.  Under KU policies and procedures, an FRB comprised of tenured faculty members was supposed to review the charges and schedule a hearing.

32.    Instead, on March 31, 2025, KU informed Professor Tao that it had created a temporary FRB chaired by a non-tenured faculty member.  Professor Tao objected to the temporary FRB on April 11 and April 16, 2025, reminding KU that his employment terms entitled him to an FRB composed exclusively of tenured faculty, a protection particularly critical given that his appeal concerned his tenure rights.  KU, however, was undeterred and asserted that the change had been approved by the Chancellor.

33.    KU's unilateral change violated the terms of Professor Tao's employment agreement.  Since his 2014 appointment, and through his provisional reinstatement in September 2024, KU's own policies limited the FRB to tenured faculty.  By installing non-tenured faculty—whose careers and advancement remain subject to KU's discretion—KU compromised the very independence the FRB was designed to protect by creating exactly the kind of conflict of interest that the policy was meant to prevent.  These actions—taken immediately after the filing of the Discrimination Action—were motivated by retaliatory intent.

6

34.     For more than a year after the untenured FRB was improperly constituted, while the Discrimination Action was being actively litigated, no FRB hearing was scheduled.  Indeed, the FRB did not reject Professor Tao's objections to the untenured FRB until March 11, 2026, nearly a year after he submitted them.  Professor Tao was left exactly where KU's retaliatory conduct placed him:  Unable to contest the charges against him, unable to secure reinstatement, and indefinitely denied the fair process to which he is entitled.

35.     On April 27, 2026, Professor Tao was offered an untenured faculty position in Arizona with lower pay, which he accepted to commence for the 2026 Fall semester.

**COUNT I**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.***
**Retaliation – Refusal to Reinstate**

36.     Professor Tao repeats and realleges paragraphs 1–35 as if fully set forth herein.

37.     KU is a covered employer as defined in Title VII.

38.     Professor Tao engaged in protected activity under Title VII by filing his EEOC charge on June 16, 2023.

39.     As detailed above, KU responded to Professor Tao's protected activity by refusing to reinstate him after he was acquitted of all the charges that formed the basis for his termination.

40.     Although more than a year passed between the protected activity and the retaliatory conduct, temporal proximity still supports an inference of discrimination because KU's retaliatory action was taken at the first available opportunity.  As soon as Professor Tao was exonerated and reinstatement was requested, KU categorically denied the request.

41.     Professor Tao has administratively exhausted this claim, having filed a charge of discrimination with the EEOC on May 2, 2025, and received a right to sue letter on April 22, 2026.

## COUNT II
### The Kansas Act Against Discrimination, K.S.A. § 44-1009(a)(4).
### Retaliation – Refusal to Reinstate

42. Professor Tao repeats and realleges paragraphs 1–35 as if fully set forth herein.

43. At all relevant times, KU was an employer within the meaning of K.S.A. 44-1002(b), and Professor Tao was an employee within the meaning of K.S.A. § 44-1002(c).

44. Professor Tao engaged in protected activity under the KAAD by filing his EEOC charge on June 16, 2023.

45. As detailed above, KU responded to Professor Tao's protected activity by refusing to reinstate Professor Tao after he was acquitted of all the charges that formed the basis for his termination.

46. Although more than a year passed between the protected activity and the retaliatory conduct, temporal proximity still supports an inference of discrimination because KU's retaliatory action was taken at the first available opportunity.  As soon as Professor Tao was exonerated and reinstatement was requested, KU categorically denied the request.

47. Professor Tao has administratively exhausted this claim, having filed a charge of discrimination with the EEOC on May 2, 2025, and received a right to sue letter on April 22, 2026.

## COUNT III
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*
### Retaliation – FRB Composition

48. Professor Tao repeats and realleges paragraphs 1–35 as if fully set forth herein.

49. KU is a covered employer as defined in Title VII.

50. Professor Tao engaged in protected activity under Title VII by filing his discrimination complaint in this Court on January 3, 2025.

51. As detailed above, KU responded to Professor Tao's protected activity with its unilateral and unprecedented alteration of the FRB's composition to Professor Tao's detriment.

52. The close temporal proximity between Professor Tao's protected activity and KU's retaliatory conduct, and the fact that KU had never before altered the FRB's composition in this manner, establishes the requisite connection between the retaliatory conduct and protected activity.

53. Professor Tao has administratively exhausted this claim, having filed a charge of discrimination with the EEOC on May 2, 2025, and received a right to sue letter on April 22, 2026.

**COUNT IV**
**The Kansas Act Against Discrimination, K.S.A. § 44-1009(a)(4).**
**Retaliation – FRB Composition**

54. Professor Tao repeats and realleges paragraphs 1–35 as if fully set forth herein.

55. At all relevant times, KU was an employer within the meaning of K.S.A. 44-1002(b), and Professor Tao was an employee within the meaning of K.S.A. § 44-1002(c).

56. Professor Tao engaged in protected activity by filing his discrimination complaint in this Court on January 3, 2025.

57. As detailed above, KU responded to Professor Tao's protected activity with its unilateral and unprecedented alteration of the FRB's composition to Professor Tao's detriment.

58. The close temporal proximity between Professor Tao's protected activity and KU's retaliatory conduct, and the fact that KU had never before altered the FRB's composition in

this manner, establishes the requisite connection between the retaliatory conduct and protected activity.

59.     Professor Tao has administratively exhausted this claim, having filed a charge of discrimination with the EEOC on May 2, 2025, and received a right to sue letter on April 22, 2026.

**PRAYER FOR RELIEF**

**WHEREFORE**, based on the foregoing, Professor Tao respectfully requests the following relief:

(a) an award of damages for lost wages or backpay;

(b) an award of damages for reputational injury, emotional distress, pain and suffering, and punitive damages;

(c) an award of reasonable attorneys' fees and costs expended in the instant litigation; and

(d) such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues which may be so tried.

Dated: July 21, 2026              Respectfully submitted,


                                  /s/ Matthew Donnelly

                                  Matthew Donnelly (23354)
                                  **PETEFISH IMMEL HIRD**
                                  **JOHNSON & LEIBOLD, LLP**
                                  842 Louisiana Street
                                  Lawrence, KS 66044
                                  Phone: (785) 843-0450
                                  Facsimile: (785) 843-0407
                                  Email: mdonnelly@petefishlaw.com
                                  Karen R. King (*pro hac vice* forthcoming) (3933512)
                                  Catherine M. Foti (*pro hac vice* forthcoming) (2067585)
                                  Elena R. Syman (*pro hac vice* forthcoming) (6132294)
                                  Jordan L. Weatherwax (*pro hac vice* forthcoming) (5706262)
                                  **MORVILLO ABRAMOWITZ GRAND**
                                  **IASON & ANELLO PC**
                                  565 Fifth Avenue
                                  New York, NY 10017
                                  Phone: (212) 856-9600
                                  Facsimile: (212) 856-9494
                                  Emails: kking@maglaw.com; cfoti@maglaw.com;
                                  esyman@maglaw.com; jweatherwax@maglaw.com

                                  *Attorneys for Plaintiff Franklin Tao*